Judge Mills
delivered the opinion.
Lewis Stephens exhibited his bill in chattepry in the court •Jieipvv, setting up an entry, with a junior patent, against the «ulry and patent of Paitar, one of t|pi defendants. *198 Parker 'in the contest relies on his patent, and Stephens* entry will of course form the main question. That entry is as follows:
A mere exp-C'-b n of wi ¡in£ne.-s to compromise a >anJ conir'ivjrsv on certain p^-incip e9, tho in writ-, íllj< f Ull:i > ceot’d by the p.r.v to whom it was addressed, form no subject for a Spe-cifio txecati-on in favor of a vendee of the ciaim at-1 tempted to be compro-. miseá.
“February ¾4, 1783. John Bryan, assignee, enters 500 acres of land on a treasury warrant, No. “(500. on Licking, at Gm Clark’s 3d encampment from Bryan’s Station, on his march to the Shawnee towns in Nov. 1782; beginning 40 pules southwardly from said camp, on the west side of the creek, and running No. to the fork of the creek, and then ou buth sides of the creek for quantity.”
Tins entry was sustained bv the court below as valid, and from that decree the defendants appealed.
Before investigating the entry, the court will dispose of a previous question arising on a writing of the defendant Parker, written upon the back of a copy of Bryan’s entry, now luid by Stephens, and before the conveyance of Bryan to Stephens, and it is in these words: “I am willing to relinquish my claim to that part of land, that may be on the west of a north line beginning 40 poles south of Clark’s encampment, and running north to the forks of the creek. Thence down the creek at right angles, and no more, to the within entry” — Signed, John Parker, and directed to John Bryan. This is set up in the complainant’s bill as a relinquishment of the land on part of Pa<ker, and the bill contends that it ought to be construed as a release, or decreed as one, as it was intended to operate as such. The answer denies that it was intended as a release, or that it was intended as such, but that it was barely a proposition of settling the controversy sent by him or offered to Bryan, and that it was never accepted by Bryan. On this subject there is no additional proof to the pleading and writing itself, and the "writing accords with the answer. It is in its terms, a naked proposition or an exposition of willingness to relinquish to the extent mentioned, without an engagement coupled with an acceptance on the other side. As such, it cannot be considered as the subject of specific execution. Besides, it stands without any consideration expressed on its face or proved in the cause, and therefore, ought not to be enforced, even if it was a positive engagement. The complainant below must therefore rely on bis entry.
It is clearly proved-in the eause, that Gen. Clark, commanding from five to seven hundred men, did encamp, on the third night of his march with the army, near South *199 Licking, on a branch laid down in the plat, and claimed by the appellee, and that, that place afterwards became famous and notorious as General Clark’s third encampment, or his encampment the third night from Bryan’s Station, on the campaign at or about the date mentioned in the entry, and that the place at the date of the entry, was well known as such. That the eneampment was on a small creek, or rather, as the witnesses all describe it, more properly a branch, and not deserving the name of a creek, and that the encampment was at the fork of that branch. This is certainly, then, a good general call in the entry, and well calculated to lead locators not only to the neighborhood, but directly to the main body of the land intended to be appropriated, and leaves the only question for consideration, is there enough in the entry to give the precise position of the. land; or in other words, can it be surveyed agreeably to its calls and the situation of the objects on the ground? But few cases, on this point, have presented greater difficulty than the present. It has not been customary with this ccurt to refuse to survey an entry and give it a precise pasitiou, when there is enough to bring the subsequent locator to the spot. A benign interpretation and favorable construction has been adopted, which has produced numerous rules greatly extending this branch of the science of the law, so that it may now be well doubted, whether tbs policy of adopting these rules of construction, has r,*t been injurious to the community, by subjecting the land law too much to new inventions and after thoughts of the court, and producing too extensive exercise of discretion. Many of these rules have, however, ripened into rules of properly, and iiavs been too long acquiesced in, to be now shaken by this court. One principle runs through the whole; and that is, that the intention of the locator, drawn from the entry itself, is to be the basis of every rule. And in no instance ought a court, arbitrarily, to affix rules to an entry, which have no foundation in the location. If such have been adopted in any instance heretofore, the inventions of new ones ought at all events to cease at this late day. The difficulty in the present case, is somewhat increased by the preparation of the cause. The branch forks, making a very obtuse angle at the encampment, and it is not shewn yvbether the forks are equal in size, or whether one is larger than the other, so as to entitle it to the appellation of the creek above the encampment, in contradistinction to *200 ⅛⅛ forils of the efeel$ This, if shewn, might greatly afffcct the ¿all io fhe emry for the west side of ttáfcreefe* Per it irevidebt, if the WeStwardty fork was thecreek, it might rt-qinre the beginning to' be on the west side of it j where it has been fitted by the court below. If, on the other Band, the eastward!/ fork is large enough to be «tiled th# iSoek, when contrasted with the vve6twrrrdi> forkjtben th# begriming otrghf to be in the forks, when it would Ire ort fife west side of the creek. And- if any thing can be de» rived from the coils'of * he entry when compared witlith# fkeparation of the eaPse, this, we conceive, by the positive tfcrl! “north to the fork of the creek’’ ought to bé the case. Assuming this aá tbé trúe place of beginning at a poirrt thai will lead to the fork of the creek by running north;, another difficulty presents-itself: does hcinlendtlie Ihte which sh’alf rftn north to-the fork,- as one line of his survey, as the court-belmv hasdecreed* Or does he design by it an extension or aSjfdttion to the course of the creek Within the forks, so a* to consiruct his survey on eaeh side of it as far as this linn extended, and thendown-on each *idt of the creek for the residue of the land? This must be determined by the en* try itself, As hersbewsa- disposition to include the en¿ campment, and evidently intended to begin forty pole* south of it, so- as to-leave no doubt of its-being fully included, add then* to lay* bis land on each Side of the creek beloW, and as by making it adine of thesarveiy, he could fint have includfed-ariy land above the forks, which be sfecml to'contemplate, we conceive that he evidently intended this'line as an extension of the general course of the creek that for into the forks, on which he meant to'cohstiuct a Sarvey on-each side of the line as far as-it went, and then down on each skid of the creek*-aild-that be could not have designed'to-inake it a line boUnding-bis cl -im'. Bib after aH tbiris- conceded to this-entry, a-difficulty'arises still tórore formidable. The encampment, no doubt, from the proofs ⅛ the cause; left traces enough' on' the trees within ir, to enable subst quVnt enquirers to distinguish generally lité- place Where if was. If is agreed by all the witnesses* that ir Covered'tert or twelve acres of ground, artd its gen1-eral centre might perhaps have been ascertained. But how fe its; iriargin to-be found? One witness shvs; be Shewed the encampment On the ground’to the surveyor, as nearlv a* he could The surveyor has reported it as shewn, and also ⅜ te sáysj- by hisowu observalion-oo the ground;’ and Uio *201 surveyor has shewn it as lying below, and -reaching np to, the forks only, and not above it. But the rest of the witnesses do not attempt to point out its margin, and they prove ««equivocally, that the (Jeneral’s tent was thirty or forty steps below the forks, and that the encampment extended into the forks and up each fork a considerable distance. One of them, when speaking on that point, is pressed to say how far. He answers, he conceives about two hundred yards, or not exceeding that distance. Now, as we have before observed, (if the locator’s intention can be ascertained), he intended beginning in tbe forks of the creek on the west side of the eastern fork, forty poles from the margin of the encampment, at such a point as that a line extended due north, would have struck the fork of the creek; thence down tbe creek as it. meanders so far, that a direct and straight line back to the beginning, would.have equalled tbe square root of five hundred acres, the quantity of bis entry; and then on each side of this line, in a square figure, to lay equal quantities of his survey. At What point shall,we then begin this line southwardly of the encampment? To adopt the fork of the creek as the highest point where the encampment was shewn with certainty to have existed, would wholly disregard the call, to run north to the fork of tbe creek, and would entirely contravene the idea in the entry, that lie meant to include the encampment and forty poles beyond it. To commence forty poles south-wardly of the fork, would be arbitrary, and in direct contradiction to the proof, that the encampment extended above the fork. How then shall we extend him far enough and find the precise point of beginning? The means are not furnished us, and the uncertainty is top great to fix on anv spot. Add to this, that the survey below the fork must, to comply with the entry, conform to the creek, and the Creek below is extremely crooked, so that every pole he was moved above the fork, and then constructing the survey from every point, would give a different position to the survey and materially change the territory it covered. Subsequent locators who had attempted to adjoin him with certainty, could not have done it with either certainty or safety; /but would have their surveys, by every change of-his position, more materially altered than his would be, The margin of the land appropriated by every fcntry is more important than tbe centre. For we often use the centre, when that alone is shewn, to ascertain the margin, and if *202 the latter is designated, the Fortner is wholly unimportant; R K ihén enough that an entry should shew, that it meatit tó include some land around a particular object, without determining with certainty, how much. It ought to exhibit a certain margin, which others could ascert&ia and adjoin with safety; for this is the imperious requisite of the law. We, therefore, conceive that the entry set up by the complainant, cannot bé supported; and the decree of the court below, On this ground, must be reversed. But as the complainant sets up in his bill, a claim Tor im-provemtnts, in ease he cannot sustain his entry, that branch 0f tpe case must then be considered.
An occupant of land improring nesUy'beiiev-ing it to be his own.wh’n can ^deduce no record ti-tie, cannot i’2 protected pying clam-ant taw, but at^chSee? principlesfhe is entitled to tio amnabie neveKhetess)of to his orations.
fíaggin and Crittenden for appellants.
He appears to hare entered under a claim in the name of Thomas Reed, by tirtueof a bond from Alexander Reed; ⅛ tillable to shew a connected title in law or equity with Thomas Reed’s claim, although supposing, by his bond, the land to be his, he has made improvements. He is therefore, not entitled, under the act of assembly Con-cerftui„ tjccmwins claimants of land; but is, tve conceive, entitled, on equitable principles, to relief on this ground, to pay for all improvements made by himself, excluding *hose made by strangers, before he entered, accounting at the same time for rents, profits, waste and deterioration of soil — the rents and profits to commence at the service of !®'c declaration in ejectment, and the waste and reduction soil during his occupancy; and this is only to apply his own farm, and not to that of the tenants which ])S ⅛35 taken under his protection at the commencement of the ejectment. The decTee of the court below is therefore reversed with costs, and the cause remanded with directions there to dismiss the bill with costs as to all the defendants except Parker, and as to him, after the amount of improvements and rent- are taken pursuant to this opinion, the injunction to be dissolved, and a decree entered for the balance, which ever Way it may appear due.